## E. B. Smyth v. The State.

### No. 3479.   Decided May 1, 1907.

**1.—False Imprisonment—Information—Assault.**

In a prosecution for false imprisonment where the information alleged an assault and detention without lawful authority the same was sufficient on motion to quash.

**2.—Same—Judge of Election—Sufficiency of Evidence—Memorandum—Verbal Arrest.**

Where upon trial for false imprisonment, the evidence showed that during an election where prosecutor was making out his ticket to vote and was using a memorandum of some sort in making out his ticket but was orderly and quiet, and the defendant who was the judge of said election had prosecutor arrested on a verbal order for making out his ticket in that manner, and refused to let prosecutor vote but kept him in custody until after the close of the election without written complaint.   Held, that the act of defendant was not only without express authority of law but without authority of law.

**3.—Same—Judicial Act—Presiding Judge of an Election—Power of.**

Where upon trial for false imprisonment the evidence showed that the defendant, who was the judge of an election, verbally ordered the arrest of the prosecutor without complaint or warrant, because the latter was using some memorandum to make out his ticket to vote at an election; and that defendant kept prosecutor in custody without allowing him to vote at said election and until said election was closed; and that there was neither a breach of the peace nor a felony committed by prosecutor at such election, such power was not conferred by law upon defendant and' he was acting outside of the power authorized by statute, and could not claim that he was acting in a judicial capacity within the scope of his authority.

**4.—Same—Charge Refused—Evil Intent.**

Where upon trial for false imprisonment the court in his charge properly defined willful, and gave the defendant the full benefit of the jury's belief as to whether his act was done willfully, there was no error in refusing a requested charge which involved ignorance of the law on the part of the defendant.

**5.—Same—Charge of Court—Other Means Than Assault.**

Where upon trial for false imprisonment the information alleged that the defendant willfully and by assault and actual violence detained the prosecutor, there was no reversible error in the court's charge that the use of other means than an assault might constitute the offense; besides the assault was fully proven in the case.

**6.—Same—Definition of the Offense—Principal—Assault.**

Every detention and imprisonment embraces the idea of an assault, and it is immaterial whether the defendant actually committed the assault, or was present and illegally ordered an officer to take the prosecutor into custody, which was done.

#### ON MOTION FOR REHEARING.

**7.—Same—Election Law—Statutes Construed—Misdemeanor.**

Under section 37 of the Election Law of 1903 (which applied in a prosecution for false imprisonment), the presiding judge of election was not authorized to act in cases of misdemeanor and issue warrants, but could only act in felony cases and breaches of the peace committed at such election; and under section 65 of said act there was no inhibition against carrying a memorandum into the voting booth by the voter; which eliminates the reason upon which the presiding judge acted in ordering the arrest of prosecutor, and strengthens the propositions of law announced by the court in the main opinion.

Appeal from the County Court of McLennan. Tried below before the Hon. J. W. Baker.

Appeal from a conviction of false imprisonment; penalty, a fine of $100.

The opinion states the case.

*Sluder & Neill, Baker & Thomas,* for appellant.—We again ask the attention of the court to 12 Ency. of Law 758, where it is stated that "the general rule that a judicial officer is not to be held liable in a civil suit for any act done in the performance of his judicial duties will apply to exempt such officers from liability for damages for false imprisonment." We direct the attention of the court to the following authorities in support of this proposition. 17 Ency. of Law 727; Rains v. Simpson, 50 Texas, 495; Gaines v. Newbrough, 34 S. W. Rep., 1048; Taylor v. Goodrich, 40 S. W. Rep., 515.

If appellant was ignorant of the law, or mistaken as to his powers under the law, he could not have the intent necessary to the commission of the offense for which he stands charged. For "where a specific intent is necessary to constitute a crime, ignorance or mistake of law negative that intent and in such case is an excuse." 8 Ency. of Law 299; 10 Ency. of Law 857; 2 Ency. of Law 297.

The court's charge wherein it attempted to define "wilful," we submit was too general and abstract; it was obscure, vague and erroneous in defining wilful to be without "reasonable ground for believing the act lawful," the test being honesty of belief instead of reasonableness of belief, Floyd v. State, 29 Texas Crim. App., 344.

The court erred in overruling appellant's third assignment of error which complains of the trial court's failure to give appellant's special charge defining an assault, which was as follows:

"One of the ingredients of false imprisonment as charged in this case was an assault committed on N. T. Shaw and violence toward him by defendant. Now you are charged that the assault herein referred to means some act or violence toward the person of another, with the intent to injure him. Words alone will not constitute an assault. A threatening gesture alone will not make an assault. It must be a physical act, in the nature of force directed toward the person, which if not prevented would produce a battery. The arrest of a person by words alone without the use of force attempted, is not an assault. Therefore, if you find there was no force threatened and no attempt to commit battery on the person of Shaw, then you will acquit defendant." Jarnigan v. State, 6 Texas Crim. App., 465; Hardin v. State, 46 S. W. Rep., 804; Flournoy v. State, 25 Texas Crim. App., 245; Lee v. State, 34 Texas Crim. Rep., 519; Donaldson v. State, 10 Texas Crim. App., 312.

*J. E. Yantis,* Assistant Attorney-General, and *Allen D. Samford,* for the State.—Appellant cites 17th Am. & Eng. Ency. of Law, p. 727.

On this same page the proposition is laid down and asserted, as though unquestioned, that the remedy against a judge for judicial acts committed through malice, fraud or corruption, that is unlawfully and wilfully committed, is by indictment or impeachment. To support this a long list of authorities is cited, to which we here now cite the court as follows: Bradley v. Fisher, 13 Wall., 354; Pratt v. Gardner, 2 Cush., 63; Lenox v. Grant, 8 Mo., 254; Taylor v. Doremus, 16 N. J. Law, 473; Yates v. Lansing, 9 Johns, 395; Weaver v. Devendorf, 3 Den., 117; Voorhees v. Martin, 12 Barb., 508; Brodie v. Rutledge, 2 Bay (S. C.), 69; Lining v. Bentham, 2 Bay, 1; McVea v. Walker et al., 31 S. W. Rep., 839; Jeffries v. Ankeny, 11 Ohio, 372.

On question of judge acting in good faith: Staples v. State, 14 Texas Crim. App., 136. On question of charge on assault: Myer v. State, 49 S. W. Rep., 600. On question of assault and violence: We lay down the proposition that every unlawful arrest or imprisonment necessarily includes a technical assault and the undisputed evidence shows that there was an unlawful arrest and that there was imprisonment. We cite the court to the following authorities: 2 Am. & Eng. Ency. of Law, p. 960 (2nd ed.); 12 Am. & Eng. Ency. of Law, vol. 722 (2nd ed.); Clark's Crim. Law, p. 218, sec. 91; 4 Am. or Century Digest, columns 974, 975; Long v. Rogers, 17 Ala., 540; State v. Parker, 75 N. C., 249, 22 Am. Rep., 669.

HENDERSON, Judge.—Appellant was convicted of false imprisonment, and his punishment assessed at a fine of $100; and prosecutes this appeal.

The facts briefly stated show that an election was being held for school trustees at the town of Mart, McLennan County, Texas; that appellant was the duly appointed and qualified judge of said election; that N. T. Shaw, the prosecutor, was a qualified voter in said election; that he (prosecutor) went to the polls to vote, and presented his poll-tax receipt to the defendant, who was sitting at a table, and he (appellant) handed to prosecutor an official ballot; the ballot had printed on it the names of four persons, and underneath these names were four blank lines. Prosecutor asked defendant if he would be permitted to scratch out any of the printed names on the ticket and write thereon the names of any other persons for whom he wanted to vote, and was told he could do this. Prosecutor then went over and sat down at a table within a few feet of the defendant for the purpose of making out his ticket, having with him a slip of paper, on which he had made out a memorandum of the names of certain persons for whom he wanted to vote for trustees, and he proceeded to make out his ticket by scratching the names that were printed on the ticket, and writing thereon the names of the persons for whom he wanted to vote, using and referring to said memorandum for that purpose. While prosecutor was so engaged appellant called to him and said something about the way in which he was making out his ticket, to the effect that he (prosecutor) must not

make out his ticket that way; that he must not use that memorandum, to which prosecutor replied: "I thought you told me that I could scratch the names that were printed on the ticket and write other names on it if I wanted to." Appellant then turned to the City Marshal Charles Beckham and asked him to come there, and told him to arrest prosecutor and lock him up in the calaboose. Beckham said, "What must I do with him?" Appellant replied, "Take him and lock him up in the calaboose." Beckham said, "What's the matter, what has he done?" to which appellant replied, "He has got something that he is using there in making out his ticket, which is against the rules." The prosecutor further testified that appellant did not request him to surrender the paper, but simply told him not to use it and ordered him arrested. The marshal immediately took charge of prosecutor, required him to surrender his ballot to appellant and required him to go with him. The marshal took him upstairs in a room and asked him if he would agree to stay there in that room if he would not lock him up in the calaboose, and left him there in charge of Charlie Weitz, and told him to keep prosecutor there. That was about two o'clock in the daytime, and he was kept in the room under the orders of appellant during the balance of the day, and was not permitted to vote on account of his arrest. It further appears from this witness' testimony that the names of the old board of trustees only were printed on the ticket; that he wanted to vote for four others whose names were not on the ticket; that he knew their surnames, but fearing that he might not remember their initials made out a memorandum of their names for use in making out his ticket; that he only had the initials of the parties written on the memorandum; that he had not promised nor been requested by any one to vote for either of these four parties. This witness also testified that he applied to an attorney to see if he could get him out during his confinement, and was informed by the attorney that he could not do anything for him. The attorney testified that he went to see prosecutor, and then went to see defendant, and asked defendant if he would make a complaint against Shaw so he could get him out on bond, which appellant refused to do, saying he would make no complaint at that time, but would keep him in custody until after the polls closed; said something to the witness about attending to his own business, and that he had better leave the house. Appellant's testimony was substantially the same as that of the State's witnesses, except that he testified that prosecutor came in once before and he saw him using a memorandum, and he told him it was against the law for him to do so, and prosecutor told him he believed he would not vote then, and handed back to appellant the ballot he had given him. About an hour afterwards prosecutor came back and asked for an official ballot, and walked over and sat down at a table and began making out his ticket. Appellant looked and saw that prosecutor was again using a memorandum of some sort in making out his ticket; that he said something to him and prosecutor replied something back, and

he then called the officer Charlie Beckham and told him to arrest Shaw and take him out of there and lock him up; that he thought in coming back the second time prosecutor was acting wilfully; that he refused to let him be released or make complaint against him and let him give bond until after the polls closed, because from the reading of the Terrell Election Law appellant thought he had a right to have him arrested. It further appears that there were two factions, one endeavoring to elect the old board of trustees, and appellant seems to have been in favor of the election of that board. Prosecutor was voting for persons whose names were not printed on the ticket and who belonged to another faction. Appellant says that he had the tickets with the names of the members of old board printed on it at Waco, and kept it secret because he did not want the other faction to know anything about it; that the names of the other candidates were presented to him in ample time to have had them printed on the tickets before the election, but he refused to do it; that he did not do it because he did not want to; that he wanted the old board elected, and did not want any of the other faction. Appellant admitted that the names of the other candidates whose names were not printed on the ticket were reputable and representative citizens of the community. Appellant further stated that prosecutor was quiet and orderly and raised no disturbance of any kind, and his demeanor toward appellant as presiding judge was respectful; that he did not permit him to vote and would not have allowed him to vote if he had requested it, because he had the memorandum with him; that he had read the Terrell Election Law and thought he had a right to have him arrested, but that he did not observe that in the section which gave him the power of a district judge, and which provided for the arrest of persons, that the only offenses named for which persons may be arrested are felonies and breaches of the peace, and did not observe that the same section further provided that when arrested for such offenses, the person arrested shall first be permitted to vote before being taken into custody. This is a sufficient statement of the case in order to discuss the assignments of error.

We think the information is sufficient as charging the offense of false imprisonment, and that the court did not err in overruling the motion to quash on this ground. It alleges an assault, which is sufficient violence, and also alleges that same was without lawful authority, which is a sufficient negation of an authority by law to arrest and detain. See Redfield v. State, 24 Texas, 133, and Maner v. State, 8 Texas Crim. App., 361. We think the subsequent allegations then and there sufficiently connect the detention with the assault and violence alleged to have been used.

Appellant complains that the court erred in overruling and disregarding his demurrer to the evidence. This brings in review the question whether or not the facts developed sustain the allegation of false imprisonment. The contention of appellant is that the testimony dis-

closed that appellant, as presiding judge of the election, was a judicial officer and as such had a judicial discretion, and accordingly he could not be held amenable for liability for false imprisonment, although he exceeded the authority conferred upon him. To support his contention appellant refers us to Rains v. Simpson, 50 Texas, 497; Gaines v. Newbrough, 34 S. W. Rep., 1048; 12 Am. & Eng. Ency. of Law, 758, and 17 Am. & Eng. Ency. of Law, 727. These authorities go to the extent of holding where the act is judicial and the judge, or person exercising the functions of judge, has jurisdiction of the subject matter and person, and the act is of a judicial character within the scope of his authority, that he will be protected against a civil action for damages for false imprisonment. In this connection a distinction appears to be taken between an action for false imprisonment and one for malicious prosecution, as was said in Herzog v. Graham, Tenn. 152, "The distinction is that false imprisonment is some interference with the personal liberty of the plaintiff which is absolutely unlawful and without authority. Malicious prosecution is in procuring the arrest or prosecution under lawful process on the forms of law, but from malicious motives and without probable cause." We take it that a prosecution of this character is regulated by our statute on the subject, which requires that the wilful detention be without express authority of law; that is, a party who justifies against a charge of false imprisonment must be able to show that his act was with express authority of law. Our law makers seem to regard the rights of a citizen with such sanctity as to require some express authority of law before he can be imprisoned; nor do we understand the authorities invoked by appellant to go beyond this, except in some cases in the absence of such a statute as we have, implied authority to make the arrest, may be a good defense. In this particular case appellant seeks to justify against the charge of false imprisonment on the ground that he was presiding judge of the election for school trustees in the town of Mart, and we are referred to sections 67 and 70 of the Terrell Election Law as authority for his acts in the premises. Section 67, among other things, provides: "The presiding judge of an election, while in the discharge of his duties as such, shall have the power of a district judge to enforce order and keep the peace. He may appoint special peace officers to act as such during the election and may issue warrants of arrest for felony, misdemeanor or breach of peace committed at such election, directed to the sheriff or any constable of the county, or such special peace officer, who shall forthwith execute any such warrants, and if so ordered by the presiding judge confine the party arrested in jail during the election or until the day after the election, when his case may be examined into before some magistrate, to whom the presiding judge shall report it; but the party arrested shall first be permitted to vote, if entitled to do so; provided, that if said party is drunk from the use of intoxicating liquor he shall not be permitted to vote until he is sober." Now what is the authority here conferred?

It is said he has the power of a district judge, but it will be observed that this is with specified limitations; he has the power of a district judge to do two things: enforce order and keep the peace. The act here performed comes within neither of these functions, as the prosecutor was not disorderly and made no breach of the peace. This statute also authorizes him to issue warrants of arrest for felony, misdemeanor or breach of the peace committed at such election. The act of the prosecutor was neither a felony nor breach of the peace, but it is said it was a misdemeanor. Subsequent section 70 does make it a misdemeanor for any person who proposes to vote and at the time he is making out his ticket has in his possession the names of persons for whom he has agreed or proposed to vote, and the preceding article give to the presiding judge authority to do what: issue warrants of arrest in cases of misdemeanor. Without here discussing whether or not this misdemeanor, connected as it is with breach of the peace, refers to such misdemeanor, it is sufficient even if it be conceded that this was a misdemeanor for which he could issue a warrant, to state no warrant was issued, but the presiding judge verbally ordered prosecutor to be arrested, not only so but to be imprisoned and confined in jail. Now all of our statutes with which we are familiar, where power is conferred to make arrest without warrant, give express authority on that subject, by conferring the power to verbally order the arrest or to arrest on the part of the officer without warrant. See Criminal Procedure, articles 247 to 252 inclusive. And these statutes have been construed strictly. See authorities cited under said articles. In this particular case special authority is conferred upon the presiding judge of the election, and he seeks to justify the imprisonment of the prosecutor by authority to issue a warrant. It is not necessary to discuss whether or not he could issue a warrant without an affidavit or complaint inasmuch as there is no pretense that any warrant was issued, as the record discloses that he merely verbally ordered the arrest and confinement. Did he have express authority to do this? There can be but one answer to this proposition. Concede that prosecutor has committed a misdemeanor in carrying into the booth, or merely to a table, as is here shown, the initials of parties for whom he desired to vote, the power conferred on him in such case would be to issue a warrant, as no authority existed authorizing him to verbally order the arrest. There was not only no express authority to do this, but there was no implied authority to order the arrest. The statute itself authorizes the exercise of special authority and confers extraordinary power upon the presiding judge of the election, and, according to all the authorities, must be strictly construed. If the act of ordering the arrest be considered a judicial act, it was not within the power conferred but an exercise of power outside of that authorized by the statute, and the presiding judge did not have jurisdiction to do what he ordered done. An officer is presumed to know his jurisdiction and to act within it. See 12 Am. & Eng. Ency. of Law, 763. Certainly one who exercises

special authority as an officer must be held to know that authority, and it would seem the election officers are held to a more strict accountability than some other classes of officers, as here their acts would come in direct conflict with the privileges and rights of a voter as is manifest in this case, for the officer not only confined prosecutor during the remainder of the election day but withheld from him the privilege of voting; and it is further manifest that the officer here seeking to exercise judicial functions was a partisan and was opposed to the ticket for which prosecutor was intending to vote. We hold that the act of appellant was not only without express authority of law but without authority of law. See Staples v. State, 14 Texas Crim. App., 136, and McVea v. Walker, 31 S. W. Rep., 839.

Appellant further complains because, as he alleges, the court erred in failing to give the following special charge: "You are charged as the law of this case that although the act of the defendant was in excess of his real authority, yet if he was doing his duty as an officer of the law as he understood the law, and ordered the arrest of the defendant under the honest though mistaken belief that he had the legal right to do so, then there is lacking the evil intent that is the gist of every criminal act, and if you so find you will acquit the defendant." On this subject the court gave the following charge: "The word 'wilful' as used in the foregoing charge means with evil intent or legal malice or without reasonable ground for believing the act to be lawful. Even if you should believe from the evidence that the defendant E. B. Smyth did make an assault upon the said N. T. Shaw, and did without lawful authority forcibly confine and imprison the said N. T. Shaw against his consent and restrain him from removing from one place to another, but you have a reasonable doubt whether said act or acts, if any, were wilfully done as hereinbefore defined, you will acquit the defendant of the charge of false imprisonment." It occurs to us that the charge given was responsive to the evidence in the case. The court properly defined wilful, and gave appellant the full benefit of the jury's belief as to whether his act was done wilfully or not. Appellant's proposition involved ignorance of the law on the part of appellant. We do not understand that appellant could claim the benefit of his ignorance of the law, while he could claim the benefit as to want of an evil intent, and the jury found that he had no reasonable grounds for believing his act was lawful. It occurs to us that the charge of the court adequately protected appellant's rights in the premises, and the charge asked by appellant and refused by the court was not the law. If there was any error in the court charging the use of other means of false imprisonment than an assault, we do not think it was such error as was calculated to injure appellant. See Meyer v. State, 49 S. W. Rep., 600. And we furthermore call attention to the fact that the complaint not only alleges an assault, but also alleges actual violence, to wit: "Did then and there wilfully and by assault and by actual violence detain him the said N. T. Shaw against,"

etc. We would further observe that the allegation as to assault was, we think, fully proven in the case; every detention and imprisonment embraces the idea of an assault, and whether the assault was actually committed by appellant or by the marshal, appellant was present and ordered the marshal to take the prosecutor into custody, which he did. See 12 Am. & Eng. Ency. of Law, p. 722, and 2, id., p. 960, and authorities there cited.

There being no errors in the record, the judgment is affirmed.

<em>Affirmed.</em>

Brooks, Judge, dissents.

ON MOTION FOR REHEARING.

June 26, 1907.

HENDERSON, Judge.—Pending the motion for rehearing our attention has been called by the State to the fact that the original opinion appears to be predicated on sections 67 and 70 of the law of 1905, whereas this offense was committed prior to the law of 1905 going into effect, and was controlled by the election law of 1903, sections 37 and 65 of said act of 1903 being applicable. Section 37 does not authorize the presiding judge of the election to act in cases of misdemeanor and issue warrants, but authorizes him to only act and issue warrants for felony, and breach of the peace committed at such election. There is no inhibition in the law of 1903 against carrying memorandum into the booth by the voter. Section 65 provides, "Any judge may require a citizen to answer under oath before he secures an official ballot whether he has been furnished with any paper or ballot on which is marked the names of those for whom he has agreed or proposed to vote, or has such paper or marked ballot in his possession, and he shall not be furnished with an official ballot until he has delivered to the judge such marked ballot or paper, if he has one, which, on delivery, shall without examination be destroyed by the judge." This is all we find with reference to the memorandum, and there is no provision in the law of 1903 as in the law of 1905 (see sec. 70, Terrell Act), providing for the punishment, as for a misdemeanor, of one who takes a writing with names of persons written thereon into the booth for whom he intends to vote. So that we were in error in applying the law of 1905 to this case. Of course, in the absence of the provisions above referred to the opinion is strengthened rather than weakened, and the propositions therein announced are correct for the additional reason that the law of 1905 does not apply to this case. Indeed, the essential features on which appellant proceeded to act as presiding judge, and on which he ordered the arrest of the prosecutor are eliminated from the case. We have examined very carefully the brief filed by appellant on motion for rehearing, and there are no questions presented which were not discussed in the original opinion.

There being no errors in the record, the motion for rehearing is overruled.

*Overruled.*

BROOKS, JUDGE.—I agree to this opinion since the election was held under the laws of 1903.